UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Judy Jackson-Pringle,<br>10 Chandleigh Court,<br>Pikesville, MD 21208<br>    Plaintiff,<br><br><br><br>WASHINGTON METROPOLITAN<br>AREA TRANSIT AUTHORITY<br>600 Fifth Street, NW<br>Washington, DC 20001<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No.:<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**
**(**Jury Trial Demanded)

COMES NOW Plaintiff Judy Jackson-Pringle (hereinafter "Plaintiff"), by and through her attorney of record, and files this her *Complaint* for damages against Defendant Washington Metropolitan Area Transit Authority (hereinafter "Defendant WMATA") and for cause would show unto the Court the following:

**PARTIES**

1. Plaintiff is an adult resident citizen of Maryland, residing at 10 Chandleigh Court, Pikesville, Maryland 21208.

2. Defendant Washington Metropolitan Area Transit Authority (WMATA) is a non-federal tri-jurisdictional government agency authorized by Congress that operates transit services and is headquartered in Washington, DC, at 600 Fifth Street, NW, Washington, DC 20001.

**JURISDICTION AND VENUE**

1

3. This action is being brought pursuant to 28 U.S.C. Section 1331, 28 U.S.C. Section 1343(a)(3) and 42 U.S.C. Section 1983 and includes any and all federal law claims plead herein for which jurisdiction and venue is attached.

4. Venue is proper in this district, pursuant to 28 U.S.C. Section 1391 because Defendant WMATA is located in the district and a substantial part of the events and omissions giving rise to this claim occurred in this judicial district.

## FACTS

5. In April 2012, Plaintiff, an African American woman, began her employment as a bus operator with Defendant WMATA.

6. In June 2016, Plaintiff was promoted to Street Operations as a Street Supervisor.

7. In June 2017, Plaintiff was at Northern Division Regional Office in the ladies restroom on the first floor.

8. While using the restroom Plaintiff heard male voice enter the ladies restroom.

9. When she looked up it was Assistant Superintendent Gilchrist.

10. Gilchrist stared at a fully exposed Plaintiff as she pulled up her underwear as if he was aroused.

11. Assistant Superintendent Gilchrist stared at Plaintiff for several minutes before turning and leaving.

12. Immediately afterwards, Plaintiff confronted Assistant Superintendent Gilchrist in his office about what had happened.

13. In response, Gilchrist just laughed it off.

14. In June 2017, Plaintiff reported the incident to Superintendent Tyrus Dowtin and Assistant Superintendent Clarissa Washington.

15. Both individuals took Plaintiff's statement and referred the incident to the Office of Equal Employment Opportunity.

16.  WMATA's office of Equal Employment Opportunity contacted Judy Jackson-Pringle to discuss sexual harassment complaint.

17. On or about, Judy Jackson-Pringle went to the Employee Assistance Program because of the traumatic sexually harassing incident.

18. On or about December 18, 2017, the Office of Equal Employment Opportunity concluded their investigation.

19. The Office of Equal Employment Opportunity concluded discrimination had occured on the basis that Gilchrist had created a hostile environment.

20. Gilchrist's discipline was confidential and still employed with WMATA.

21. Despite WMATA sexual harassment policy requiring Gilchrist's termination, Plaintiff was forced to still work with Assistant Superintendent Bobby Gilchrist.

22. In January 2018, the interim superintendent Ms. Barton in charge of Plaintiff's work began giving her tasks that were impossible to complete within the required time specifications.

23. Ms. Barton then began denying  Plaintiff's request for vacation time for no reason.

24. In contrast, Ms. Barton granted vacation time for other employees.

25. Plaintiff was asked to cover the shifts of training employees beyond the scope of her employment.

26. The extra shifts added extreme and undue stress onto Plaintiff.

27. Plaintiff would often times return to her duty station to find Ms. Barton and the employees having dinner while she was busy covering their shifts.

28. In late October 2018, Ms. Barton was replaced by Letroy Baker.

29. Around Thanksgiving, Plaintiff's mother became ill.

30. Plaintiff took time off to care for her ailing mother.

31. Plaintiff was told that her absence would not affect her position.

32. When she attempted to return, Plaintiff was told changes had been made to shifts and that her shift had been reassigned.

33. Plaintiff in turn would be working the overnight shift.

34. After the employee who took over her shift was terminated for sexual harassment, Plaintiff was asked to return to her shift.

35. Plaintiff declined returning to her shift as she did not feel comfortable at the ime.

36. Plaintiff was then forced to return to her shift despite her expressed discernment.

37. Plaintiff then began getting written up for baseless claims by her supervisor in her new shift.

38. The treatment in which Plaintiff received began within a month of her complaint of sexual harassment against Gilchrist.

39. Plaintiff's believe that the treatment was in retaliation of her filing a complaint for sexual harassment..

**ADMINISTRATIVE PROCEDURE**

40. In 2020, Plaintiff filed charges of discrimination, satisfying the requirements of 42 U.S.C. Section 2000(e) with the EEOC in Baltimore, MD. Such charge was filed within one hundred and eighty (180).

41. The EEOC conducted an investigation on claims. On April 8, 2020, the EEOC determined that it was unable to conclude that the information obtained establishes a violation of the statutes.

42. The *Complaint* is being filed within ninety (90) days of the Plaintiff's receipt of the Notice of Right to Sue. Plaintiff has complied with all statutory and administrative prerequisites to filing suit.

## CAUSES OF ACTION

### COUNT I
### SEX DISCRIMINATION

43. Plaintiff re-alleges all prior paragraphs of the *Complaint* as if set out herein in full.

44. Plaintiff is a member of a protected class who has been consistently subjected to actions creating a hostile working environment for Plaintiff because of her gender and/or sex in violation of Title VII of the Civil Rights Act of 1964.

45. The acts and volitions of Defendant resulted in a knowing, willful, and intentional violation of Plaintiff's rights guaranteed under Title VII of the Civil Rights Act of 1964. Such unlawful employment practices violate 4 U.S.C. Section 2000e-3.

46. Plaintiff was using the women's restroom when her male superintendent entered.

47. The male superintendent stared at the fully exposed Plaintiff as she pulled up her underwear.

48. When Plaintiff confronted the male superintendent, he merely laughed off her complaint.

49. As a direct and proximate result of Defendant unlawful and discriminatory conduct toward Plaintiff, Plaintiff has lost wages and benefits and has sustained other pecuniary loss.

50. Defendant' discriminatory practices, insults, contempt, and disdain have been demeaning to Plaintiff and have caused her to suffer deep pain, humiliation, anxiety, and emotional distress.

51. The unlawful actions of Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff.

## COUNT II
## RETALIATION

52. Plaintiff re-alleges all prior paragraphs of the *Complaint* as if set out herein in full.

53. Plaintiff engaged in activity protected under Title VII of the Civil Rights Act of 1964. Defendant and agents and employees of Defendant, retaliated against Plaintiff after she made reports of discrimination to the EEOC. Plaintiff was retaliated against by unjustly subjecting her to unjust scrutiny, suspensions, and exclusions

54. Defendant began writing Plaintiff up without merit, assigned Plaintiff extra shifts, and created impossible tasks for Plaintiff to complete.

55. Defendant has no reason for any such acts.

56. Defendant's actions demonstrate a direct and causal connection between Plaintiff invoking her constitutional rights and the resulting termination by her employer.

57. Such unlawful practices violate 42 U.S.C. Section 2000e-5(b).

## COUNT III
## CONSTITUTIONAL VIOLATIONS UNDER 42 U.S.C. SECTION 1981

58. Plaintiff re-alleges all prior paragraphs of the *Complaint* as if set out herein in full.

59. Defendant subjected Plaintiff to an unwelcomed hostile work environment based on her gender through severe and pervasive actions that altered the conditions of her employment, including, but not limited to, subjecting her to unwelcomed daily sexual advancements, harassment, and ridicule; subjecting her to discrimination; interfering with her work performance; not addressing his complaints about discrimination, harassment, and disparate treatment.

60. Plaintiff was using the women's restroom when her male superintendent entered.

61. The male superintendent stared at the fully exposed Plaintiff as she pulled up her underwear.

62. When Plaintiff confronted the male superintendent, he merely laughed off her complaint.

63. Despite Plaintiff's complaints, about this hostile work environment, Defendant failed to take appropriate action to redress the discriminatory and hostile work environment conditions imposed on her.

64. The aforementioned acts of Defendants were willful, reckless, and malicious acts of unlawful discrimination against Plaintiff because of her race and have deprived Plaintiff the enjoyment of all benefits, privileges, terms, and conditions of his employment relationship in violation of 42 U.S.C. § 1981.

65. By Defendant' actions, it shows a direct and casual connection between Plaintiff invoking her constitutional rights. Such unlawful employment practices violate Section 1981, Title VII of the Civil Rights Act of 1964, as amended, as well as 42 U.S.C. Section 2000e, et. seq.

## DAMAGES

66. As a consequence of the forgoing misconduct of Defendant, Plaintiff sustained economic damages, pain and suffering, great mental stress, depression, insomnia, shock, and humiliation.

67. As a consequence of the forgoing conduct of Defendant, Plaintiff has damages in an amount exceeding the jurisdictional requirements of the Court.

## RELIEF

68. Plaintiff requests that the Court issue the following relief:

    a. Enter declaratory relief declaring that Defendant have engaged in sex discrimination, race discrimination, retaliation, and constitutional violations;

    b. Award Plaintiff compensatory and punitive damages for all the mentioned causes of action in an amount to be determined by a jury of her peers;

    c. Award Plaintiff attorney's fees, cost and expenses of litigation; and

    d. Award such other relief to which Plaintiff may be entitled to under law.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands judgment against Defendant in an amount exceeding the jurisdictional requirements of this Court, all together with Court costs, including attorney's fees, plus pre and post judgment interest, and for any other relief which this Court deems just and proper.

Respectfully submitted, this the 10th day of July, 2020.

**Judy Jackson-Pringle**

/s/ Charles Tucker, Jr.
CHARLES TUCKER, DC Bar #993515
TUCKER MOORE GROUP, LLP
8181 Professional Place, Suite 207

        Hyattsville, Maryland 20785
        Charles@tuckerlawgroupllp.com
        Office: 301-577-1175