UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDY JACKSON-PRINGLE,

    Plaintiff,

    v.

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY,

    Defendant.

Civil Action No. 20-1880 (JDB)

## MEMORANDUM OPINION

Plaintiff Judy Jackson-Pringle brings this claim against her employer, Washington Metropolitan Area Transit Authority ("WMATA"), alleging various forms of discrimination and unlawful employer activity under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. See Compl. [ECF No. 1] ¶¶ 43–65. The core of her claim is an allegation of unlawful retaliation in response to a 2017 internal complaint of sexual harassment. See id. at ¶¶ 7–39. The parties have completed discovery, and WMATA has moved for summary judgment on all counts. See generally Def. WMATA's Mot. for Summ. J. [ECF No. 18] ("Mot."). Because Jackson-Pringle's complaint was not timely filed, the Court will grant WMATA's motion.

## Background

Jackson-Pringle is an African-American woman in her late 60s or early 70s who has worked for WMATA since April 2012. Compl. ¶ 5; cf. Tr. of Judy Jackson-Pringle Dep. [ECF No. 20-2] ("Jackson-Pringle Dep. Tr.") at 208:1–3.[1] She has worked at multiple locations and served in various positions over the years, most recently as a Bus Operations Manager at Andrews

---

[1] Jackson-Pringle and WMATA have attached different excerpts of this deposition transcript to their briefs. To delineate between each exhibit, the Court will list the appropriate ECF number with each citation to the transcript.

1

Federal Center Bus Garage. Jackson-Pringle Dep. Tr. [ECF No. 18-7] at 11:8–12:15; Compl. ¶ 6. Before the events precipitating this lawsuit, she had incurred only one disciplinary infraction and had not been cited for any kind of unsatisfactory work. Jackson-Pringle Dep. Tr. [ECF No. 20-2] at 51:2–5, 117:10–20, 184:6–15, 212:8–11; Pl.'s Opp'n to Mot. [ECF No. 20] ("Opp'n") at 4.

In June 2017, a male coworker walked in on Jackson-Pringle while she was in the women's restroom and stared at her while she was exposed. Compl. ¶¶ 8–11; Jackson-Pringle Dep. Tr. [ECF No. 18-7] at 21:18–22:9; see generally Jackson-Pringle Dep. Tr. [ECF No. 20-2] at 155:10–159:1. She submitted an internal Equal Employment Opportunity ("EEO") complaint in June 2017,[2] Formal Discrimination Compl. [ECF No. 18-2]; Jackson-Pringle Dep. Tr. [ECF No. 18-7] at 21:18–22:9, and after an internal investigation, WMATA's EEO Office found that Jackson-Pringle had indeed been subjected to a hostile environment, Dec. 2017 EEO Finding [ECF No. 18-3]; Def. WMATA's Statement of Material Facts Not in Dispute [ECF No. 18-1] ("Def.'s Stmt. of Facts") ¶ 3. The perpetrator of the harassment was suspended. Gilchrist Dep. Tr. [ECF No. 20-6] at 15:1–9. Soon after, Jackson-Pringle moved to a new office within WMATA and began working under a new supervisor, Jackson-Pringle Dep. Tr. [ECF No. 18-7] at 11:5–21, 23:5–9, 42:9–11, although she remained partially under the supervision of her harasser, Jackson-Pringle Dep. Tr. [ECF No. 20-2] at 54:9–55:17; Compl. ¶ 21; Opp'n at 3.

Jackson-Pringle alleges that she was then subjected to myriad instances of discrimination in retaliation for her 2017 internal complaint. Compl. ¶¶ 22–39; Jackson-Pringle Dep. Tr. [ECF No. 20-2] at 85:4–89:13. She claims that she was written up and suspended for failure to complete "impossible tasks"; that she was passed over for a new position as a result of age, sex, and race discrimination; and that her shifts were unfairly changed to accommodate a younger male

---

[2] At the time, Jackson-Pringle did not file a charge of discrimination with the EEOC; she filed only an internal complaint within WMATA. Jackson-Pringle Dep. Tr. [ECF No. 18-7] at 16:13–17:5.

coworker with less experience, contrary to the promises of her supervisors that her shifts would remain the same. Compl. ¶¶ 22–39; Jackson-Pringle Dep. Tr. [ECF No. 18-7] at 45:8–11, 219:11–14; Jackson-Pringle Dep. Tr. [ECF No. 20-2] at 80:5–13, 85:4–89:13, 206:13–209:13. She alleges that this discrimination continued under several different supervisors and at several different work locations. See Jackson-Pringle Dep. Tr. [ECF No. 20-2] at 75:4–22. During that period, Jackson-Pringle lodged several informal complaints internally, but she did not pursue any of them officially (as she had in 2017). Id. at 23:10–18.

On December 9, 2019, Jackson-Pringle filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Charge of Discrimination [ECF No. 18-5]; Def.'s Stmt. of Facts ¶ 5. On the charge sheet, she checked the box indicating that she had suffered discrimination based on "Retaliation." Charge of Discrimination. In the description box below that section, she wrote,

> I began my employment with the above reference[d] employer in April 2012. I filed an internal charge of discrimination against respondent assistant superintendent in June 2017. I was being giv[en] egregious work that respondent knew it was impossible to complete. I was written up for the egregious work. My shift was changed to accommodate younger males with less time in grade. I was denied a position that was offered to a younger male with less experience.
>
> Respondent did not give me any explanation why I was being treated differently.
>
> I believe I have been retaliated against because I filed a sexual harassment internal complaint against respondent in violation of Title VII of the Civil Rights Act of 1964 as amended, with respect to harassment.

Id. (cleaned up).

By no later than March 12, 2020, Jackson-Pringle's counsel received a Notice of Right to Sue letter from the EEOC. See Email Exchange with EEOC [ECF No. 18-8] at 1 (March 12 email

from Jackson-Pringle's counsel indicating they received a right-to-sue letter).[3] The heading of the letter indicated it was from the EEOC, and the bottom contained a signature line for Rosemarie Rhodes, Director of the Baltimore Field Office of the EEOC, but Rhodes's signature was missing from the document. First Not. Right to Sue at 1. The letter also contained a space for the EEOC to note the date of mailing, and although a date was not typed into this space, a rubber-stamped date of Dec. 17, 2019 was overlaid on top. Id.

Jackson-Pringle's counsel emailed case workers at the EEOC on March 12, 2020 and informed them that the letter "was not signed or date stamp[ed]." Email Exchange with EEOC at 1. Counsel requested a properly signed and dated right-to-sue letter, reporting that he was "unsure if [Jackson-Pringle's] deadline [for filing her complaint] has been reached because no date is on the right to sue" letter. Id. The EEOC re-issued Jackson-Pringle's right-to-sue letter on April 8, 2020. Id. at 3–4; Notice of Right to Sue [ECF No. 18-6] ("Second Not. Right to Sue").

On July 10, 2020, Jackson-Pringle brought this action for retaliation, sex discrimination, and race discrimination in violation of Title VII of the Civil Rights Act of 1964.[4] See Compl. ¶¶ 43–65. In her complaint, she also raised a constitutional claim under 42 U.S.C. § 1983,[5] Compl.

---

[3] Neither party attached a copy of this first letter as an exhibit to their summary judgment briefing. To aid in the adjudication of WMATA's summary judgment motion, and pursuant to its authority under Federal Rule of Civil Procedure 56(e), the Court ordered WMATA to file a copy of the letter. Order, July 1, 2022 [ECF No. 22] at 1. WMATA complied on July 5. Def. WMATA's Suppl. Filing to Its Mot. [ECF No. 23-1] ("First Not. Right to Sue") at 1–4. The letter indicates that it was mailed on December 17, 2019. Id. at 1. On July 15, 2020, Jackson-Pringle also submitted a supplemental filing in which she reiterated her existing arguments and attached only the April 8 Notice of Right to Sue letter. Pl.'s Suppl. Filing to Its Mot. for Summ. J. [ECF No. 24] ("Pl.'s Suppl. Filing"); Exhibit A to Pl.'s Suppl. Filing to Its Mot. for Summ. J. [ECF No. 24-1].

[4] Formally, Jackson-Pringle has alleged counts of only race and sex discrimination. See Compl. ¶¶ 43–57, 64–68; Def. WMATA's Reply to Opp'n [ECF No. 21] ("Reply") at 2. At various points in the record, however, she also implies that she intended to allege age discrimination as well. See Charge of Discrimination; Jackson-Pringle Dep. Tr. [ECF No. 18-7] at 45:8–11, 219:11–14; Jackson-Pringle Dep. Tr. [ECF No. 20-2] at 206:13–209:13; Opp'n at 4, 9.

[5] Jackson-Pringle's complaint states this claim under 42 U.S.C. § 1981, Compl. ¶¶ 58–65, but the Court believes she was mistaken or that this was an error.

¶¶ 58–65, but she has now requested that this Court instead treat that claim as a hostile work environment claim under Title VII, Opp'n at 18–20.[6]

With discovery complete, WMATA now moves for summary judgment. Mot. at 1. Jackson-Pringle has filed her memorandum in opposition, and WMATA has filed its reply. WMATA's motion is ripe for resolution.

## **Legal Standard**

A court must grant a motion for summary judgment when there is "no genuine dispute as to any material fact . . . and the movant is entitled to judgment as a matter of law." Fed. R Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When looking to the substantive law on which each claim rests, an issue of fact is material if it "might affect the outcome of the suit," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine if it could "be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party," id. at 250.

When considering a motion for summary judgment, a court may not "make credibility determinations or weigh the evidence," Lopez v. Council on Am.-Islamic Rels. Action Network, Inc., 826 F.3d 492, 496 (D.C. Cir. 2016) (quoting Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006)), but it must accept the nonmoving party's evidence as true and draw all reasonable inferences in that party's favor, Anderson, 477 U.S. at 255. At the same time, the nonmoving party must rely on more than "the mere existence of a scintilla of evidence" for its assertions, Anderson, 477 U.S. at 252; the party must instead "go beyond the pleadings . . . [to] designate specific facts showing that there is a genuine issue for trial," Celotex, 477 U.S. at 324 (internal quotation marks and citation omitted). "Importantly, while summary judgment must be approached with specific

---

[6] In the alternative, Jackson-Pringle requests to rescind the constitutional claim and re-plead it as a Title VII hostile work environment claim. Opp'n at 18–20.

caution in discrimination cases, a plaintiff is not relieved of his obligation to support his allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." Pollard v. Quest Diagnostics, 610 F. Supp. 2d 1, 17 (D.D.C. 2009) (citation omitted) (cleaned up).

The motion for summary judgment must be granted if the moving party successfully shows that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  That is, "[s]ummary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." Lopez, 826 F.3d at 496.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

## Analysis

A plaintiff must commence a Title VII civil suit "within ninety days after obtaining notice of [the plaintiff's] right to sue from the EEOC." Dougherty v. Barry, 869 F.2d 605, 609 (D.C. Cir 1989); accord 42 U.S.C. § 2000e-5(f)(1).  This "90-day period is not a jurisdictional prerequisite to filing suit in federal district court but operates as a statute of limitations and is subject to waiver and equitable tolling." Smith-Haynie v. Dist. of Columbia, 155 F.3d 575, 579 (D.C. Cir. 1998) (citing Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 152 n.6 (1984) (per curiam)).  In the absence of any waiver or equitable tolling defense, however, a failure to initiate litigation within the 90-day period requires dismissal of any Title VII claim. See Dougherty, 869 F.2d at 613 ("[N]o equitable considerations justified or excused appellees' failure to meet the ninety-day limit.  Appellees' Title VII claims therefore were not timely filed and should have been dismissed by the district court."); Harvey v. City of New Bern Police Dep't, 813 F.2d 652, 653–54 (4th Cir. 1987)

(affirming dismissal of a Title VII claim that was filed 91 days after the plaintiff's receipt of a right-to-sue letter).

In its motion for summary judgment, WMATA asserts that Jackson-Pringle failed to meet this 90-day deadline.[7]  Mem. in Supp. at 5 n.2 ("Plaintiff also has a glaring 90-day right-to-sue letter problem . . . ."). According to WMATA, the 90-day clock began ticking when Jackson-Pringle received the first right-to-sue letter. Id.  Although the letter indicates it was mailed in December 2019, First Not. Right to Sue at 1, it is not entirely clear when Jackson-Pringle's counsel received it. But even assuming that Jackson-Pringle's counsel did not receive the first letter until shortly before he emailed the EEOC about it on March 12, 2020, see Email Exchange with EEOC at 1, Jackson-Pringle's statutory deadline to file a civil action elapsed in mid-June. But Jackson-Pringle did not file her complaint until July 10. Compl. at 8. Because Jackson-Pringle now brings only Title VII claims, see Opp'n at 18–20, WMATA asserts that all of Jackson-Pringle's claims are untimely and must be dismissed, Reply at 4–7.

Jackson-Pringle disagrees. Opp'n at 17. She claims instead that the first right-to-sue letter did not start her 90-day clock because the letter was unsigned and undated. See id.; see also Email Exchange with EEOC at 1 ("We are unsure if [Jackson-Pringle's] deadline has been reached because no date is on the right to sue."). Thus, according to Jackson-Pringle, the 90-day period

---

[7] WMATA also argues that some of Jackson-Pringle's claims are barred because she did not file a charge with the EEOC within 180 days of the alleged harassment. Mot. at 1–2; Def.'s Mem. of P. & A. in Supp. of Mot. [ECF No. 18] ("Mem. in Supp.") at 2–5; see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116–17 (2002); Oviedo v. WMATA, 948 F.3d 386, 393 (D.C. Cir. 2020). Indeed, Jackson-Pringle herself appears to concede that only discrimination which occurred after June 12, 2019 is actionable in this suit under these cases. Opp'n at 11. However, the Court will instead focus on WMATA's argument that Jackson-Pringle's complaint is untimely because it entitles WMATA to summary judgment on all counts, and "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 431 (2007) (internal quotation marks and citation omitted).

7

began only after she received a signed and dated right-to-sue letter on April 8, see Second Not. Right to Sue, making her July 10 complaint timely.[8]  Opp'n at 17.

This disagreement ultimately boils down to the following issues: what is required to start the 90-day clock, and did Jackson-Pringle's receipt of the first right-to-sue letter meet those requirements?  Additionally, if the answer to both of those questions is yes, should the Court waive the 90-day deadline requirement?  For the reasons that follow, the Court agrees with WMATA that it is entitled to summary judgment due to the untimeliness of Jackson-Pringle's complaint.

## I.     When Does the 90-Day Clock Begin?

The EEOC is required to notify an individual who has filed a charge of unlawful discrimination (1) if the EEOC dismisses the individual's charge, (2) if the EEOC or the Attorney General have not filed a civil action in response to the charge within a certain period of time, or (3) if the EEOC or the Attorney General have not entered into a conciliation agreement with the alleged wrongdoer within a certain period of time.  42 U.S.C. § 2000e-5(f)(1); accord Lynn v. W. Gillette, Inc., 564 F.2d 1282, 1285 (9th Cir. 1977).  Section 2000e-5(f)(1) provides that an individual who wishes to litigate the claims alleged in the charge of unlawful discrimination must initiate that litigation "within ninety days after the giving of such notice."  Courts have interpreted this language to mean that the 90-day clock begins ticking after the individual receives notice, not when the notice is sent.  E.g., Lynn, 564 F.2d at 1286 n.3 ("It is the receipt of a Right to Sue letter, not its dispatch, which sets the beginning of ninety-day period."); Hammel, 79 F. Supp. 3d at 242

---

[8] To be precise, 93 days passed between April 8 and July 10.  But it is not clear when Jackson-Pringle received the April 8 letter, and in such situations, courts typically add a few days to the 90-day deadline to account for transit in the mail and delivery.  E.g., Hammel v. Marsh USA, Inc., 79 F. Supp. 3d 234, 242 (D.D.C. 2015) ("[I]f the date on which plaintiff received the letter is unknown, it is presumed that the letter was received three days after it was mailed . . . .") (citing Baldwin Cnty., 466 U.S. at 148 n.1); Ruiz v. Vilsack, 763 F. Supp. 2d 168, 171 (D.D.C. 2011) (noting that courts generally grant an extra three or five days to account for transit).  Moreover, as discussed below, the date of receipt, not the date of issuance, is the date on which the clock begins to run.

("[T]he 90-day clock begins the day after the date of receipt of the EEOC right to sue letter."); see also 29 C.F.R. § 1614.407(a) (stating that a civil action under Title VII may be filed "[w]ithin 90 days of receipt of the agency final action"). The D.C. Circuit has further held that the EEOC must also inform the claimant of his or her "right to sue in federal court and of the [time] limit for bringing such an action" in order for the 90-day clock to begin. Al-Saffy v. Vilsack, 827 F.3d 85, 95 (D.C. Cir. 2016) (alteration in original) (quoting Williams v. Hidalgo, 663 F.2d 183, 187 (D.C. Cir. 1980)).

The EEOC usually gives this notice via a "right-to-sue" letter. See Hammel, 79 F. Supp. 3d at 242; Paniconi v. Abington Hosp.-Jefferson Health, Civ. A. No. 21-5384, 2022 WL 1634224, at *1 (E.D. Pa. May 24, 2022). But neither the text of Title VII nor that of 29 C.F.R. § 1601.28—the regulation governing final agency action—provides that the notice must be given in any specific form. Courts accordingly have held that a potential plaintiff's clock begins when the individual receives appropriate notice, even if that notice does not always come via a formal letter. See, e.g., Ebbert v. DaimlerChrysler Corp., 319 F.3d 103, 116 (3d Cir. 2003) ("[O]ral notice can suffice to start the 90-day period" if it is "equivalent to written notice."); Ball v. Abbott Advert., Inc., 864 F.2d 419, 420–21 (6th Cir. 1988) (per curiam) (90 days began when EEOC investigator informed attorney by telephone of EEOC's final decision and issuance of right-to-sue, not when attorney received physical letter); cf. Lax v. Mayorkas, 20 F.4th 1178, 1182–83 (7th Cir. 2021) (90 days began when plaintiff read the body of an email detailing that a right-to-sue letter was attached).[9]

---

[9] Notice need not be given directly to the claimant, and notice given to the claimant's attorney is imputed to him or her. E.g., Deskins v. Barry, 729 F. Supp. 1, 2 (D.D.C. 1989) ("[A]bsent compelling circumstances, notice sent to a party's attorney imputes notice to the party.").

The lesson of these cases is clear: a claimant has 90 days to file suit from the date they receive sufficient notice, regardless of the medium in which that notice is conveyed. See Ebbert, 319 F.3d at 116 ("It simply would not make sense to force courts and defendants to wait for a specific form of notice in situations where a plaintiff is fully aware of the deadline he or she must meet to prosecute a lawsuit.").

### II. Jackson-Pringle's 90-Day Clock Began No Later than March 2020.

The law governing the deadline for filing a Title VII complaint makes clear that Jackson-Pringle's 90-day clock began, at the latest, in March 2020; therefore, her complaint is untimely. The first right-to-sue letter notified Jackson-Pringle that the EEOC was terminating its processing of her discrimination charge, that she could file a lawsuit to enforce her rights under Title VII, and that she had 90 days to file any such lawsuit. First Not. Right to Sue at 1–3; see Dougherty, 869 F.2d at 610 ("[I]n unambiguous language, the right to sue notice declared that failure to sue within that time period would result in forfeiture of [appellees'] cause of action.'" (second alteration in original) (citation omitted)). The letter thus met all the requirements articulated in Al-Saffy for Jackson-Pringle's 90-day clock to begin running, see 827 F.3d at 95, and Jackson-Pringle has not asserted that she, through her counsel, failed to receive this notice, see Opp'n at 17 (accepting that Jackson-Pringle received first right-to sue letter); Pl.'s Suppl. Filing; see also Deskins, 729 F. Supp. at 2 (noting attorney's receipt of a right-to-sue letter is generally imputed to client).

Admittedly, the right-to-sue letter was not signed, and Jackson-Pringle has also claimed it was undated.[10]  Opp'n at 17.  But neither the statute, regulation, nor Al-Saffy mention any requirement that the notice must be given via a signed and dated letter, and cases such as Ebbert, 319 F.3d at 116, and Ball, 864 F.2d at 420–21, demonstrate that even a written letter itself is not

---

[10] As noted throughout this Memorandum Opinion, however, "2019 DEC 17" was plainly stamped directly below the "Date Mailed" line.  First Not. Right to Sue at 1.

required. If "oral notice can suffice to start the 90-day period," Ebbert, 319 F.3d at 116, the Court cannot conclude that written notice suffices only when all epistolary formalities have been satisfied.

The Ninth Circuit reached a similar conclusion in Love v. Harsh Investment Corp., No. 92-35394, 1993 WL 4811 (9th Cir. Jan. 12, 1993). In that case, the plaintiff received an unsigned right-to-sue letter and argued that the missing signature "rendered that notice inadequate as a matter of law." Id. at *1. The Ninth Circuit rejected this contention because "[n]owhere in [42 U.S.C. § 2000e-5(f)(1)] is there a requirement that the notification must be by a signed document." Id. While Love focused on the statutory text, id., this Court also notes that 29 C.F.R. § 1601.28(e)—the regulation dictating the contents of right-to-sue letters—contains no mention of a signature or a date.

Jackson-Pringle makes two main arguments in opposition. First, she claims—without any authority—that "an undated and unsigned notice has not clearly been issued by the signatory authority." Opp'n at 17. But both the letter's heading[11] and unfilled signature line make clear the letter was an official communication from Rosemarie Rhodes, Director of the Baltimore Field Office of the EEOC. See First Not. Right to Sue at 1; cf. Love, 1993 WL 4811, at *1 (noting letter in that case "had a signature line for Michael Dougherty . . . but was not personally signed"). Nor would the Court's conclusion change even if it accepted Jackson-Pringle's assertion that the letter was missing a date. The date that would have been included was the date the notice was mailed. First Not. Right to Sue at 1 (listing "Date Mailed" under the blank date field). It bears repeating that the date of receipt of notice, not any date written or stamped on the right-to-sue letter itself,

---

[11] The letter's heading listed several pieces of information indicating its authenticity, including Jackson-Pringle's EEOC case number and the name of the EEOC investigator assigned to her claim. First Not. Right to Sue at 1.

starts the 90-day clock.  Lynn, 564 F.2d at 1286 n.3.[12]  Indeed, the letter's date of issuance comes into play only if the date of receipt is unknown; otherwise, the mailing date itself has no legal significance.  See Hammel, 79 F. Supp. 3d at 242; Edwards, 198 F. Supp. 3d. at 878.  But the first letter here was received no later than March 12, 2020, so any date, or lack thereof, on that letter is immaterial.

Second, Jackson-Pringle argues that the EEOC's delivery of a second letter in response to her request demonstrates that the first letter was invalid.  Opp'n at 17.  But courts have heard and rejected this argument; receipt of a second right-to-sue letter does not invalidate or supersede the first letter.  See Strong-Fischer v. Peters, 554 F. Supp. 2d 19, 23 (D.D.C. 2008) ("[A] second right to sue letter tolls the limitations period only if the EEOC issues [the letter] pursuant to a reconsideration on the merits under 29 C.F.R. § 1601.21(b)." (second alteration in original) (quoting Crane v. Nat'l Cable Satellite Corp., 484 F. Supp. 2d 100, 103 (D.D.C. 2007))); Santini v. Cleveland Clinic Fla., 232 F.3d 823, 825 (11th Cir. 2000) (per curiam) ("Here, the EEOC reissued a Notice merely to correct a technical defect rather than pursuant to a reconsideration of the Charge. Because the issuance of a second Notice . . . is immaterial, the district court did not err in finding that Santini's federal claims were time-barred.").  The EEOC sent Jackson-Pringle a second right-to-sue letter because she requested one, not because the first letter failed to start her 90-day clock.  Hence, neither of Jackson-Pringle's arguments succeed, and the Court concludes her complaint was not timely filed.

---

[12] There is an exception to this rule for cases where "the claimant does not receive the notice in a timely fashion due to her own fault," Edwards v. Johnson, 198 F. Supp. 3d 874, 878 (N.D. Ill. 2016) (quoting Bobbitt v. Freeman Cos., 268 F.3d 535, 538 (7th Cir. 2001)), but that exception is irrelevant here.

### III.   Equitable Tolling Is Not Warranted.

Although Jackson-Pringle has not explicitly sought equitable tolling of the 90-day clock, the Court will also explain why tolling is inappropriate in this case. Adherence to the 90-day deadline articulated in Title VII "is not a jurisdictional prerequisite to filing suit in federal district court . . . and is subject to waiver and equitable tolling," Smith-Haynie, 155 F.3d at 579, but the D.C. Circuit has also explained that "'equitable tolling' is not some free floating doctrine allowing the courts to override the will of Congress," Maggio v. Wis. Ave. Psychiatric Ctr., Inc., 795 F.3d 57, 60 (D.C. Cir. 2015). "The critical question is whether Congress meant to allow courts to toll the statutory limitations period. The answer to that question depends on 'whether a particular basis for suspending the running of the statute of limitations had received judicial recognition when the statute became law.'" Maggio, 795 F.3d at 60 (quoting Nat'l Ass'n of Mfrs. v. NLRB, 717 F.3d 947, 961 (D.C. Cir. 2013)). "The plaintiff has the burden of pleading and proving any equitable reasons for his or her failure to comply with Title VII's time requirements," Bass v. Bair, 514 F. Supp. 2d 96, 99 (D.D.C. 2007), and "[t]he court's equitable power to toll the statute of limitations [in Title VII] will be exercised only in extraordinary and carefully circumscribed instances," Mondy v. Sec'y of the Army, 845 F.2d 1051, 1057 (D.C. Cir. 1988).

The Supreme Court has outlined four general situations in which equitable tolling might be appropriate: (1) when "a claimant has received inadequate notice," (2) "where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon," (3) "where the court has led the plaintiff to believe that she had done everything required of her," and (4) "where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction." Baldwin Cnty., 466 U.S. at 151 (internal citations omitted). These situations are not necessarily exclusive. See Menominee Indian Tribe of Wis. v. United States, 764 F.3d 51, 58 (D.C. Cir. 2014) ("The Supreme Court has emphasized that equitable

13

tolling must be applied flexibly, case by case, without retreating to 'mechanical rules' or 'archaic rigidity.'" (citation omitted)), aff'd, 577 U.S. 250 (2016); see also Dougherty v. Barry, 869 F.2d 605, 613 (D.C. Cir. 1989) (suggesting equitable tolling could be warranted when either the court or agency misleads the plaintiff); Alvarado v. Mine Serv., Ltd., 626 F. App'x 66, 69 (5th Cir. 2015) (noting that "the EEOC's misleading the plaintiff about the nature of her rights" may justify equitable tolling (citation omitted)). But these four categories nonetheless provide helpful guidance for determining when a court should exercise its discretion to excuse a plaintiff's failure to meet a statutory deadline.

At the outset, categories two (pending motion for appointment of counsel) and four (affirmative misconduct by defendant) do not apply to this case because Jackson-Pringle is represented by counsel and has not alleged that WMATA engaged in any wrongdoing that caused her to miss her filing deadline. Additionally, as outlined above, category one (inadequate notice) also does not apply: the first right-to-sue letter adequately informed Jackson-Pringle of the EEOC's final action regarding her claim of discrimination, her right to file a civil suit under Title VII, and that she had 90 days to file suit from the date she received the notice. See Al-Saffy, 827 F.3d at 95.

Jackson-Pringle's best argument for tolling would be that the EEOC misled her into believing that her 90-day clock did not begin until she received the second right-to-sue letter. See Opp'n at 17. Her counsel did inform the EEOC that they were "unsure if her deadline has been reached because no date [was] on the [original] right to sue," EEOC Email Exchange at 1, and Jackson-Pringle interpreted the EEOC's subsequent issuance of a second letter as a ratification of that uncertainty, see Opp'n at 17 ("If it was the case that no executed notice was required, then the EEOC would not have issued a properly executed notice after Dr. Jackson-Pringle alerted them of

14

the deficiencies in the notice she received. Instead, the EEOC would have simply explained that the previous notice was valid."). Moreover, the second right-to-sue letter does state that Jackson-Pringle must file suit within 90 days of receiving "this notice." Second Not. Right to Sue.

That being said, the first right-to-sue letter included the same language, First Not. Right to Sue at 1, and courts have generally held that the first notice's language trumps that of the second, see, e.g., Dougherty, 869 F.2d at 610 (concluding that a second right-to-sue notice did not revive the plaintiff's ability to sue in part because "[i]n unambiguous language, the [first] right to sue notice declared that failure to sue within that time period would result in forfeiture of [appellees'] cause of action." (second alteration in original) (citation omitted)); Santini, 232 F.3d at 825 ("[T]he issuance of a second Notice [merely to correct a technical defect] . . . is immaterial."). Moreover, Jackson-Pringle is the one who asked for the second letter, EEOC Email Exchange at 1, and the letter states that it was "[i]ssued on [r]equest," Second Not. Right to Sue, a disclaimer that is not present in the first letter, First Not. Right to Sue at 2. Even though the EEOC apologized to Jackson-Pringle's counsel for the apparent defect in the first letter, see Email Exchange with EEOC at 1 ("My apologies – things are getting quite hectic over here . . . ."), the Court cannot conclude that the EEOC misled Jackson-Pringle by giving her the second letter she requested. After all, "an attorney is presumed to have a working knowledge of Title VII's filing requirements," Bass, 514 F. Supp. 2d at 100 (cleaned up; citation omitted), and the EEOC representative's apology for sending an unsigned letter was not an incorrect explanation of Jackson-Pringle's legal rights, cf. Ramirez v. City of San Antonio, 312 F.3d 178, 184 (5th Cir. 2002) ("It is not sufficient for [plaintiff] to show that the EEOC failed to give him some relevant information; he must demonstrate that the EEOC gave him information that was affirmatively wrong.").

Ultimately, Jackson-Pringle's counsel mistakenly believed that the first right-to-sue letter was invalid because it lacked a formal signature and handwritten date.  EEOC Email Exchange at 1.  This mistake is unfortunate, but the doctrine of equitable tolling should be used "only sparingly," and a "garden variety claim of excusable neglect" is not sufficient to overcome this hurdle.  Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 96 (1990); see also Miller v. Downtown Bid Servs. Corp., 281 F. Supp. 3d 15, 21 (D.D.C. 2017) ("[T]his Circuit has rejected the position that miscalculating a filing deadline is a sufficient ground for equitable tolling.").  "Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants."  Baldwin Cnty., 466 U.S. at 152.  Hence, the Court concludes that any confusion caused by Jackson-Pringle's receipt of an unsigned right-to-sue letter and the EEOC's issuance of a second letter upon request does not qualify as an extraordinary circumstance that merits equitable tolling.

## Conclusion

For the foregoing reasons, the Court concludes that Jackson-Pringle's complaint is untimely and equitable tolling is not warranted.  Accordingly, the Court will grant WMATA's motion for summary judgment.  A separate Order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: July 28, 2022